Hon. Philip H. Brandt
Chapter 11
June 13, 2001, 9:00 a.m.
1200 6th Ave., Room 309, Seattle
Response due: June 11, 2001



Case: 01-10961   DocType: ORD

FILED
U.S. Bankruptcy Court
Western District of Washington
JUN 13 2001
MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IN RE ) NO. 01-10961
)
MAKAROVA INVESTMENTS, L.L.C., ) ORDER APPROVING SETTLEMENT
)
Debtor. )
_____ )

THIS MATTER came on regularly before the Court upon the Debtor's Notice and Motion for Order Approving Settlement and for Order Shortening Time (the "Motion"). The Debtor having appeared through the undersigned attorney; the Court having considered the Motion; the Court finding it appropriate to shorten time for hearing of the Motion under the facts and circumstances of this case; and the Court finding that the notice of the Motion has been duly and properly issued to all creditors and other parties in interest, there were no objections to the Motion, the settlement as proposed is in the best interest of the Estate, and the Motion should be granted in all respects; NOW, THEREFORE, IT IS HEREBY

ORDERED as follows:

1. Time is shortened such that the Debtor's Motion may be heard on the Court's June 13, 2001 motion calendar.

2. The Court approves the proposed settlement between the Debtor and other parties and Amin and Afshan Lakha, husband and wife, Lakha Investment Co., L.L.C., and Emerald City Construction Management Co., pursuant to the terms set forth in the Agreement for Full

ALAN J. WENOKUR
ATTORNEY AT LAW
1601 SECOND AVENUE, SUITE 1080
SEATTLE, WASHINGTON 98101
(206) 682-6224
WSBA # 13679

ORDER APPROVING SETTLEMENT - 1

ORIGINAL

1  Settlement and Complete, Mutual Release of All Claims, Liens and Actions attached hereto and
2  incorporated herein.
3      3. The Debtor is authorized to sign the attached agreement and any other documents as
4  necessary which are consistent with the settlement terms approved herein.
5      DATED this 13 day of June, 2001.

_____
Hon. Philip H. Brandt
U.S. Bankruptcy Judge

Presented by:

_____
Alan J. Wenokur, WSBA # 13679
Attorney for Debtor

Approved for entry:

INSLEE, BEST, DOEZIE & RYDER, P.S.

By _____
Andrew L. Symons, WSBA # 7770
Attorney for Lakha, et al.

ALAN J. WENOKUR
ATTORNEY AT LAW
1601 SECOND AVENUE, SUITE 1080
SEATTLE, WASHINGTON 98101
(206) 682-6224
WSBA # 13679

ORDER APPROVING SETTLEMENT - 2

## AGREEMENT FOR FULL SETTLEMENT
## AND COMPLETE, MUTUAL RELEASE
## OF ALL CLAIMS, LIENS AND ACTIONS

THIS AGREEMENT ("Agreement") is made and entered effective as of the _____ day of _____, 2001, by, between and among the following: Makarova Investments, L.L.C., a Washington limited liability company ("Makarova Investments"); Aleksandra Makarova ("Makarova"); Dmitri Strugov ("Strugov"); Practical Fuels, Inc., a Washington corporation ("PF"); Lakha Investment Co., L.L.C., a Washington limited liability company ("LIC"); Amin S. Lakha and Afshan Lakha, husband and wife ("Lakha"); and Emerald City Construction Management Co., a Washington corporation, d/b/a Emerald City Construction ("ECC"). The aforesaid are at times collectively referred to herein as "the Parties" and at times individually referred to herein as "Party."

WHEREAS, Makarova Investments and LIC entered into that certain Agreement for Purchase and Sale of Real Property and Gasoline Station, dated December 7, 1998, and various amendments and addenda thereto, all collectively referred to herein as the "Purchase Agreement," relating to the real property described on Exhibit A hereto (the "Property"), which closed in escrow on or about July 6, 1999, and

WHEREAS, Makarova Investments and ECC entered into that certain AIA Standard Form of Agreement Between Owner and Contractor dated as of November 27, 1998, and various amendments and addenda thereto, all collectively referred to herein as the "Construction Contract," with respect to which construction commenced after the close of escrow of the Purchase Agreement, and

WHEREAS, ECC provided a performance bond and a payment bond, each under Bond No. 850186P from Developers Insurance Company ("DIC") as Surety, with ECC as Principal and Makarova Investments as Owner, applicable to the Construction Contract (the "Bonds"), and

WHEREAS, Makarova Investments provided a certain Promissory Note dated July 6, 1999, in the principal amount of $400,000 to LIC (the "Note"), secured by two deeds of trust, each dated June 18, 1999, and one recorded under Snohomish County Auditor's No. 199907300160, and the other recorded under King County Department of Records and Elections Recording No. 19990730001013 (the "Deeds of Trust"), and

WHEREAS, disputes arose between Makarova Investments and ECC during the course of construction under the Construction Contract, as a result of which Makarova Investments and Makarova filed a lawsuit in King County Superior Court under Cause No. 00-2-24743-5 SEA, naming as defendants Lakha, LIC, ECC, DIC, Barghausen Consulting Engineers, Inc., and

AGREEMENT FOR FULL SETTLEMENT
AND COMPLETE, MUTUAL RELEASE
OF ALL CLAIMS, LIENS AND ACTIONS
DOCS\51255\0159\02194912.03                      - 1 of 8 -

certain other parties who claimed liens against the Property, and alleging various claims (the "Lawsuit"), and

WHEREAS, ECC recorded its lien against the Property on July 5, 2000, for the amount of $289,212 together with interest and attorney's fees and costs (the "Lien"), and ECC thereafter filed a counterclaim in the Lawsuit to foreclose upon its lien and LIC filed a counterclaim in the Lawsuit for amounts due it pursuant to the Note, and

WHEREAS, Makarova Investments filed for Chapter 11 reorganization in the United States Bankruptcy Court for the Western District of Washington on January 29, 2001, under Bankruptcy Case No. 01-10961 (the "Bankruptcy Case") and thereafter removed the Lawsuit to the Bankruptcy Court under Adversary Proceeding No. A01-1137 (the "Adversary Proceeding"), and

WHEREAS, ECC has not received final payment on the amounts it claims to be due on the Construction Contract, and Makarova Investments advised it does not have sufficient funds in any event to pay the amount demanded by ECC and would be unable to successfully reorganize as an operating entity and satisfy all creditors' claims if required to pay ECC the amount demanded and claimed to be due on its invoices, and, if ECC were to pursue its claims in litigation and receive judgment thereon in the amount demanded and claimed to be due on its invoices and pay applications, Makarova Investments would not be able to pay and would not be able successfully to reorganize as an operating entity and satisfy all creditors' claims, and

WHEREAS, Makarova Investments, Makarova and Strugov joined as plaintiffs in a lawsuit filed in King County Superior Court, Cause No. 01-2-00596-1SEA, naming Lakha, LIC, and ECC, among others, as defendants, which action has now been consolidated with King County Superior Court Cause No. 00-2-29297-0SEA (the "Consolidated Action"), and

WHEREAS, Makarova Investments, Makarova, Strugov and PF, on the one hand, and Lakha, LIC and ECC, on the other hand, have agreed to a full, final, complete and irrevocable settlement, resolution, disposition and discharge of their respective claims, one against the other, on the terms and conditions stated herein. Now, therefore,

THE PARTIES, INDIVIDUALLY AND MUTUALLY, COVENANT AND AGREE AS FOLLOWS:

1. **Recitals True.** Each of the foregoing recitals is agreed to be true, and each is incorporated and made a part of the terms of this Agreement the same as if restated here in full.

2.  **Bankruptcy Court Approval Required.** This Agreement and its enforceability as to any Party is subject to approval by the Bankruptcy Court in the Bankruptcy Case. This Agreement shall be executed by all Parties with the understanding that its enforceability remains subject to Bankruptcy Court approval. Upon execution of this Agreement by all Parties, this Agreement shall be presented by counsel for the Parties to the Bankruptcy Court for approval. The signature by a Party to this Agreement shall be of no force or effect and shall not be binding upon such Party unless and until such Bankruptcy Court approval is obtained, *except that,* after all Parties have signed this Agreement, while such Bankruptcy Court approval is pending, no Party may withdraw from or revoke his, her or its approval of and entry into this Agreement, irrespective of any subsequently-discovered fact or circumstance. Each Party here signing further agrees to apply in good faith for Bankruptcy Court approval and not to interfere with or object to such approval. While such approval is pending, no Party shall file any pleading, seek any discovery, or otherwise pursue or take action adverse to any other Party hereto in the Lawsuit, the Adversary Proceeding, or the Consolidated Action (*providing,* the same shall not prohibit any Party here from responding to discovery from persons or entities named in the Consolidated Action who are not Parties here). As used herein, "Bankruptcy Court approval" means a written order signed and entered by the Bankruptcy Court in the Bankruptcy Case which order does not amend, delete, or impose or create any material change to, any term, condition or provision of this Agreement. If Bankruptcy Court approval as described herein is not obtained by July 2, 2001, then this Agreement shall be null and void and of no force or effect and shall be treated the same as an offer of settlement pursuant to Evidence Rule 408.

3.  **Dismissal of Claims in Litigation.** The Parties agree that the Lawsuit and the Adversary Proceeding, and all claims brought therein, shall be dismissed with prejudice and without costs. The Parties direct their respective counsel to prepare and/or sign such stipulations, orders and other pleadings and papers as shall be necessary to accomplish such dismissal as soon as practicable following Bankruptcy Court approval of this Agreement. In addition, Makarova, Makarova Investments, and Strugov hereby agree to dismissal with prejudice and without cost of all claims, allegations, counts, causes of action, and requests for relief alleged by them or on their behalf or attributed to them or to the Purchase Agreement, the Construction Contract or the Property in the Consolidated Action, and they hereby direct their counsel in said action to prepare and/or execute an appropriate stipulation, order and any such other pleadings or papers as may be necessary to effect full and final dismissal of such claims as soon as practicable following Bankruptcy Court approval of this Agreement. *Provided,* claims by the Makarova Parties (defined below) against persons or entities other than any of the Lakha Parties (defined below) shall be dismissed in the above-referenced proceedings without prejudice, and, if any of the Makarova Parties shall proceed with any claim or commence any action against any person or entity against whom a claim has been dismissed without prejudice as referenced herein, such claim or action shall be maintained separately from and not part of the Lawsuit, the Adversary Proceeding or the Consolidated Action.

AGREEMENT FOR FULL SETTLEMENT
AND COMPLETE, MUTUAL RELEASE
OF ALL CLAIMS, LIENS AND ACTIONS
DOCS\S12550191\02194192.03                              - 3 of 8 -

4. <u>Release of All Claims by Makarova Parties</u>. Makarova, Makarova Investments, Strugov and PF (all of the aforesaid herein collectively referred to as "Makarova Parties") hereby acknowledge and agree that each and all of their respective claims, complaints and grievances against any and/or all of Lakha, LIC, ECC and Puget Sound Stations, Inc. ("PSS") and all past and present employees, shareholders, members, officers, directors, attorneys, and agents of Lakha, LIC, ECC and/or PSS (all of the aforesaid entities and persons herein collectively referred to as "Lakha Parties") arising from any contract, agreement, transaction, act, omission, event, condition, or occurrence that has existed or occurred at any time prior to the date hereof, have been and are fully resolved, concluded and settled to the satisfaction of the Makarova Parties, and accordingly, the Makarova Parties, for themselves and for their heirs, marital communities, assigns, successors-in-interest, representatives, affiliates, related entities, trustees, shareholders, members, and all other persons and entities who may claim by or through the Makarova Parties or on their behalf ("the Makarova Releasing Parties"), hereby fully, finally, irrevocably, and unconditionally (subject only to Bankruptcy Court approval as stated in Paragraph 2 above) waive, discharge, release and relinquish any and all claims, demands, actions, causes of action, lawsuits, and rights of action of any nature any or all of them may have, known or unknown, matured or non-matured, accrued and unaccrued, arising from any transaction, occurrence, condition, act, omission, representation, statement, promise, contract, agreement, chose-in-action, instrument, or event, that has occurred, been made or given, taken place, or existed as of the date hereof, against each and all of Lakha Parties. This acknowledgment and release are intended to include, but are not limited to, all of the claims alleged or which might have been alleged or which are within the scope of any and all claims, counts, causes of action and allegations made by or on behalf of, or applicable to, any of the Makarova Releasing Parties in the Lawsuit, the Adversary Proceeding or the Consolidated Action and any and all claims of the Makarova Releasing Parties relating in any way to or arising in any way, directly or indirectly, from the Purchase Agreement, the Construction Contract, the Note, the Deeds of Trust, or the Property.

5. <u>Release of Claims Against Bonds</u>. The Makarova Releasing Parties further waive, release and discharge any and all claims any of them may have against the Bonds and DIC and acknowledge, agree and direct that the Bonds be discharged and deemed exonerated as to any such claim of the Makarova Releasing Parties.

6. <u>Release of All Claims by Lakha Parties</u>. The Lakha Parties, for themselves and their heirs, marital communities, assigns, successors-in-interest, representatives, trustees, shareholders, members, and all other persons and entities who may claim by or through them or on their behalf ("the Lakha Releasing Parties"), hereby fully, finally, irrevocably, and unconditionally (subject only to Bankruptcy Court approval of this Agreement as stated in Paragraph 2 above and ECC's receipt of the payment referred to in Paragraph 10 hereof) waive, discharge, release and relinquish any and all claims, demands, actions, causes of action, lawsuits, and rights of action of any nature any or all of them may have, known or unknown, matured or non-matured, accrued and unaccrued, arising from any transaction, occurrence, condition, act,

omission, representation, statement, promise, contract, agreement, chose-in-action, instrument, or event, that has occurred, been made or given, taken place, or existed as of the date hereof, against each and all of the Makarova Parties. This release is intended to include, but is not limited to, all of the claims alleged or which might have been alleged or which are within the scope of any and all claims, counts, causes of action and allegations made by or on behalf of, or applicable to, any of the foregoing Lakha Releasing Parties in the Lawsuit, the Adversary Proceeding or the Consolidated Action and any and all claims of the Lakha Releasing Parties relating in any way to or arising in any way, directly or indirectly, from the Purchase Agreement, the Construction Contract, the Note, the Deeds of Trust, or the Property.

7. **Release of the Lien.** Upon receipt of Bankruptcy Court approval as stated in Paragraph 2, ECC shall execute and deliver to counsel for Makarova Investments a release of lien in recordable form sufficient to accomplish a complete and final release of the Lien.

8. **Indemnity as to Lien Claims.** Upon receipt of Bankruptcy Court approval as stated in Paragraph 2, ECC shall obtain releases of, or shall indemnify and hold Makarova Investments and the Property harmless from, the liens recorded against the Property by Sid's Choice Electric, Inc.; Lakeridge Paving Co., L.L.C.; Windwood Landscape, Inc.; Western Petroleum Equipment, Inc.; and S&J Trucking, Concrete & Excavating, Inc.

9. **Delivery of Note and Release/Reconveyance of Deeds of Trust.** Upon receipt of Bankruptcy Court approval as stated in Paragraph 2, LIC shall deliver to counsel for Makarova Investments the originals of the Note and the Deeds of Trust and waives and releases any and all claims thereon and shall have duly executed Requests for Reconveyance of said Deeds of Trust at the time of said delivery.

10. **Payment.** Makarova Investments covenants and agrees that it or its designee shall pay ECC the sum of Twenty-Thousand Dollars ($20,000) in a single, lump sum payment in cash, within two (2) business days following Bankruptcy Court approval of this Agreement. The Parties acknowledge said payment does not constitute full or final payment of the amounts invoiced by ECC for its work pursuant to the Construction Contract but represents the total amount Makarova Investments is able to pay, and Makarova Investments represents to ECC that it has no other funds available with which to make any payment substantially equivalent to the amount demand and claimed to be due ECC on its invoices or pay requests, Makarova Investments would be unable to complete successful reorganization as an operating entity and satisfy all creditors' claims and would, consequently be unable to pay said amount. Based upon said representation, upon receipt of said payment, ECC and the Lakha Releasing Parties agree not to demand or seek any additional payment from the Makarova Parties now, or at any time in the future with respect to any claim, contract, agreement, invoice, pay request, cause or action or other matter that is referred to in this Agreement or within the scope of the subject matter of this Agreement or of the Lawsuit, the Adversary Proceeding or the Consolidated Action. The Lakha Releasing Parties have had

opportunity to ask questions and receive answers concerning the financial status and financial capabilities of the Makarova Parties and have obtained sufficient information to the satisfaction of the Lakha Releasing Parties and their representatives from which to make a knowing and intelligent decision and waiver as to the matters set forth in this paragraph and this Agreement.

11. **No Admission**. All of the Parties agree and acknowledge that each of them has entered into this Agreement solely for the reasons stated herein and to avoid the costs of litigation and that neither this Agreement nor any Party's entry herein is intended to be or shall be construed as an admission by that Party or by any other Party of liability for or the merit of any claim, demand, allegation, contention, assertion, complaint, answer, counterclaim, third party claim, motion, or position of any other Party with respect to any of the matters described herein or within the scope of this Agreement.

12. **Adequacy of Consideration/Consultation with Counsel**. Each Party acknowledges that the actions, covenants and representations of the other Parties as expressly stated herein, and each Party's entry into and compliance with this Agreement, are adequate and sufficient consideration for the purposes of entry into this Agreement. Each Party represents and warrants that, prior to signing this Agreement, he, she or it has had full and adequate time and opportunity to consult with independent counsel of his, her, or its choosing with respect to the terms and conditions of this Agreement and that he, she or it has entered into this Agreement knowingly, voluntarily and consciously, for the purposes stated herein.

13. **Amendment**. No amendment to this Agreement shall be binding on any of the parties to this Agreement unless such amendment is in writing and is executed by all parties.

14. **Authority to Act/Non-Assignment of Claims**. Each Party warrants and represents that he, she, or it has full and complete authority to enter into this Agreement, and each person executing this Agreement on behalf of a Party warrants and represents that he or she has been fully authorized to execute this Agreement on behalf of such Party and that such Party is bound by the signature of such representative. Each Party further warrants and represents to every other Party hereto that he, she or it has not in whole or in part assigned, transferred, conveyed, pledged or given any interest in any claim, cause of action, right or other matter which is the subject matter of this Agreement or has been identified or released herein and that there is no other person or entity (other than the Bankruptcy Court, as stated in Paragraph 2 above) whose consent to, approval of, or joinder in this Agreement is required for its enforceability or efficacy as to all matters expressed herein.

15. **Venue**. The Parties each and all agree, in the event of any dispute or action to enforce, apply, construe or interpret this Agreement, venue for such proceeding is proper in a state or federal court located in King County, Washington, and each person and Party signing this Agreement consents to the personal jurisdiction of such courts for such purpose.

16. **Interpretation and Fair Construction of Settlement Agreement.** This Agreement has been jointly prepared by the attorneys for each Party. In the event it should be determined that any provision of this Agreement is uncertain or ambiguous, the language in all parts of the Agreement shall be construed as a whole according to its fair meaning and shall not be construed for or against any Party on the basis that its attorney drafted or participated in the drafting of this Agreement.

17. **Further Assurances.** Each Party agrees to execute such additional documents and take such additional actions as may reasonably be required to effectuate the terms of this Agreement, providing the same are without material additional expense or risk to such Party and do not constitute or result in a material change to any of the terms or conditions hereof.

18. **Binding Effect.** The rights, duties and obligations as set forth or created by this Agreement shall inure to the benefit of and be binding upon the Parties and upon their respective heirs, marital communities, assigns, successors in interest, grantees, agents, employees, shareholders, members, personal representatives, trustees, and trustees in bankruptcy.

19. **Integration.** This document contains the full, entire and complete agreement of the Parties. Each Party signing below warrants and represents to each other Party and to any other person reading this Agreement that there exist no other agreements, no separate or "side" agreements, promises, undertakings, arrangements, or inducements of any nature or kind, express or implied, written or oral, between any of the Makarova Parties on the one hand, and any of the Lakha Parties on the other hand, upon which any Party hereto has joined in, signed or entered into this Agreement. No prior or contemporaneous representations, negotiations, inducements, promises or agreements of any kind, express or implied, have been made or exist between or among the Parties which relate to the subject matter hereof, and to the extent any Party alleges the same, any such matter, if alleged or claimed, shall in any event be of no force or effect, it being the intent of each Party to this Agreement that each and every promise, inducement, understanding that forms the consideration and basis for entry into this Agreement be set forth expressly and in full in this Agreement and, if not so expressly stated in this document, such matter shall be without any force or effect whatsoever.

20. **Construction.** The Parties acknowledge that each of them and their counsel have reviewed and participated in the revising and drafting of this Agreement and that any rule of construction to the effect that ambiguities in a document are to be construed against the drafting party shall not be employed in or be applicable to interpretation or construction of this Agreement or any of its terms.

21. **Signatures in Counterparts.** This Agreement may be executed in two or more counterparts, and all such executed counterparts shall constitute one and the same Agreement.

AGREEMENT FOR FULL SETTLEMENT
AND COMPLETE, MUTUAL RELEASE
OF ALL CLAIMS, LIENS AND ACTIONS
DOCS\51255\0190219492.03                             - 7 of 8 -

22. *Representation of Each Signatory.* Each person signing this Agreement, for himself or herself or on behalf of any entity that is a Party named herein, acknowledges that, *before signing below,* he or she has read this Agreement in full and fully understands all of its terms and provisions. If he or she does not understand the meaning and effect of each term, condition, promise, representation and provision of this Agreement, he or she agrees and represents to every other person signing this Agreement that he or she has requested and received assistance from his or her counsel or counsel for the Party for whom he or she is signing and that, *before signing,* he or she has received sufficient explanation of all terms in this Agreement from such counsel so that he or she fully understands the meaning, content and intent of each provision of this Agreement. Each person here signing, whether as a Party or on behalf of a Party, further acknowledges, understands and agrees that every other person and Party here signing shall rely upon the truthfulness of this statement by each and every other person signing this Agreement.

DATED the day and year first written above.

MAKAROVA INVESTMENTS, L.L.C.            LAKHA INVESTMENT CO., L.L.C.

By_____             By_____
Aleksandra Makarova, Manager            Amin S. Lakha, General Manager

PRACTICAL FUELS, INC.                   EMERALD CITY CONSTRUCTION
                                        MANAGEMENT CO.

By_____             By_____
Dmitri Strugov, President               Andy Lakha, President


_____               _____
Aleksandra Makarova, Personally         Amin S. Lakha


_____               _____
Dmitri Strugov, Personally              Afshan Lakha


AGREEMENT FOR FULL SETTLEMENT
AND COMPLETE, MUTUAL RELEASE
OF ALL CLAIMS, LIENS AND ACTIONS
DOCS\31255\01\0210492.03                     - 8 of 8 -

PARCEL A:

THE SOUTH 142.5 FEET OF THAT PORTION OF TRACT 6, MOORE'S FIVE ACRE TRACTS, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 9, OF PLATS, PAGE 28, IN KING COUNTY, WASHINGTON, LYING WESTERLY OF 14TH AVENUE SOUTH AND EASTERLY OF PRIMARY STATE HIGHWAY NUMBER 1, AS CONDEMNED IN KING COUNTY SUPERIOR COURT CAUSE NUMBER 521479;

PARCEL B:

THAT PORTION OF TRACTS 6 AND 7, MOORE'S FIVE ACRE TRACTS, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 9 OF PLATS, PAGE 28, IN KING COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT 184.57 FEET EAST AND 142.5 FEET NORTH OF THE SOUTHWEST CORNER OF TRACT 7, SAID ADDITION;
THENCE EAST A DISTANCE OF 348.72 FEET TO THE WEST LINE OF 14TH AVENUE SOUTH;
THENCE NORTH A DISTANCE OF 142.5 FEET ALONG SAID WEST LINE;
THENCE WEST A DISTANCE OF 347.79 FEET;
THENCE SOUTH A DISTANCE OF 142.5 FEET TO THE POINT OF BEGINNING;

EXCEPT THAT PORTION THEREOF CONVEYED TO THE STATE OF WASHINGTON BY DEED RECORDED UNDER RECORDING NUMBER 4352298;

PARCEL C:

THE SOUTH 75 FEET OF THE NORTH 285 FEET OF THE EAST HALF OF TRACT 7, AND THAT PORTION OF THE SOUTH 75 FEET OF THE NORTH 285 FEET OF TRACT 6 LYING WESTERLY OF 14TH AVENUE SOUTH, ALL IN MOORE'S FIVE ACRE TRACTS, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 9, OF PLATS, PAGE 28, IN KING COUNTY, WASHINGTON;

EXCEPT THOSE PORTIONS CONVEYED TO THE STATE OF WASHINGTON FOR HIGHWAY PURPOSES BY DEEDS RECORDED UNDER RECORDING NUMBERS 4852297 AND 5146514;

PARCEL D:

THAT PORTION OF THE SOUTH 142.5 FEET OF THAT PORTION OF TRACT 6, MOORE'S FIVE ACRE TRACTS, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 9 OF PLATS, PAGE 28, IN KING COUNTY, WASHINGTON, LYING EASTERLY OF 14TH AVENUE SOUTH;

EXCEPT THAT PORTION THEREOF CONVEYED TO THE STATE OF WASHINGTON FOR HIGHWAY PURPOSES UNDER DEED RECORDED UNDER RECORDING NUMBER 4935305.



EXHIBIT A